■ In the Matter of OSSINING URBAN- RENEWAL AGENCY, Respondent, v ELISSA LORD et al., Defendants and PINE TOP BUILDING CORP., Appellant. — In a condemnation proceeding, defendant Pine Top Building Corp. appeals from a final order and judgment (one paper) of the Supreme Court, Westchester County (Burchell, J.), dated December 4, 1981, which, *inter alia,* confirmed a report of the commissioners of appraisal dated September 14, 1979, which awarded Pine Top $250 for the extinguishment of its easement over the condemned parcel. Final order and judgment affirmed, with costs. In 1968 Elissa Lord was the owner of a parcel of land located in Ossining, Westchester County, New York. The southeast portion of such land had frontage on Snowden Avenue, a public street. In that year the State of New York condemned a broad strip of land (State Parcel No. 10) which ran east to west across the entire parcel owned by Lord, for the purpose of securing a right of way for a connector road 'to the proposed Hudson River Expressway. This condemnation by the State effectively divided the original parcel into two tracts comprising respectively 13.6868 acres (north parcel) and 5.5 acres (south parcel). The resulting south parcel fronted on Snowden Avenue, with the condemned strip effectively separating the north parcel from the south parcel. The State taking, however, was "with access", i.e., it did not deny access to abutting owners, since the State contemplated that abutting property owners would be given access to the connector road to be constructed at its eastern edge. Said Parcel No. 10 had a frontage on Snowden Avenue of 26.03 feet. Thereafter, in September, 1971, the State granted Pine Top Building Corp. a highway work permit for the purpose of constructing utilities on the north parcel. This permit covered a period from September 20, 1971 to September 20, 1972. At hearings conducted before the commissioners of appraisal, Robert Lord testified that on January 6, 1972 the Village of Ossining approved a site plan for the development of the north parcel which called for the construction of 176 dwelling units "and the construction of a means of ingress and egress between Snowden Avenue, which was the closest public street" and the north parcel. As of May 9, 1972, however, the State abandoned· its plans for the construction of the Hudson River Project, which abandonment also involved the connector roads. This discontinuance was pursuant to a statute which removed the said project from the law establishing the Hudson River Expressway (L 1972, ch 237, § 1, eff May 9, 1972, amdg Highway Law, § 340-C). On April 25, 1972, immediately prior to the State abandoning the Hudson River Project, Elissa Lord conveyed the 13.6868-acre north parcel to defendant Pine Top. The deed effecting such conveyance provided in pertinent part: "Together with the right of ingress and egress, in common with others, over Sandy Drive to and from Beach Avenue, a public street. Together with the Right of Ingress

and Egress to and from Snowden Avenue over, across and upon an 'Access Drive' running Southerly and Southeasterly from the Southerly side of the premises herein described through lands of The People of The State of New York and continuing Southeasterly through lands of Elissa Lord to Snowden Avenue." We note that Sandy Drive is located at the northwest corner of the north parcel. The said easement as described in this deed to Pine Top followed the path of the access road provided by the highway work permit granted by the State on September 13, 1971, as well as the described access road contained in the site plan approved by the village. It ran from the north parcel southeasterly across State Parcel No. 10 into and across the south parcel in a southerly and southeasterly direction, eventually exiting into Snowden Avenue. Thus the easement purports to grant to the north parcel as conveyed to Pine Top ingress and egress from and into Snowden Avenue, the nearest public highway. However, although a critical portion of that easement runs across State Parcel No. 10, the State was not a party to the conveyance. Thereafter, in 1973, the Ossining Urban Renewal Agency (OURA) condemned the south parcel, but did not join Pine Top as a party to such condemnation proceeding. Pine Top thereafter moved to intervene in the proceeding on the grounds that the easement set forth in the Lord deed of 1972 provided Pine Top with the only access that was available to it to a public highway, that OURA's taking of the south parcel included the land over which Pine Top's easement ran, and thereby extinguished such easement, and that by reason of the extinguishment of the easement as it ran across the south parcel, the north parcel became "landlocked and valueless", thereby depriving Pine Top of its property without just compensation. This intervention was opposed by OURA on the basis that the south parcel was condemned subject to the easement in question. The matter was submitted thereafter to Special Term upon an agreed statement of facts. In the agreed statement the parties noted the existence of Elissa Lord's April 25, 1972 deed to Pine Top and further stated: "4. The easement granted to Pine Top in said conveyance represented the only access of ingress and egress which Pine Top had to a public road from the property so conveyed." By order dated October 3, 1974, Special Term (Cerrato, J.), granted the motion to intervene. The order stated that "the easement of ingress and egress granted to PINE TOP BUILDING CORP. was extinguished by the taking of ELISSA LORD's property" by OURA and further directed that the commissioners of appraisal ascertain the compensation, if any, to which Pine Top would be entitled by virtue of such extinguishment. Thereafter, Special Term's order was reversed by this court (*Matter of Ossining Urban Renewal Agency v Lord,* 49 AD2d 576), but upon further appeal the Court of Appeals concluded that Pine Top's easement in the south parcel was extinguished, reversed this court's order and reinstated the order of Special Term (39 NY2d 628). Hearings were then held before the commissioners of appraisal, at which hearings Pine Top claimed damages of $1,250,000 for the extinguishment of the easement across the south parcel and the alleged resultant landlocking of the north parcel. At these hearings Pine Top's appraisal expert testified that, prior to condemnation by the State in 1968, Elissa Lord "obviously" had the right to cross her own property and that since the "with access" taking by the State "did not deny any of those access rights", she continued to enjoy subsequent to taking the same access and crossing rights that existed before. He conceded, however, that at the time of taking, the right of access did not have any specific location on the taking map. This opinion by the expert as to access rights, while based upon his experience in appraisal matters, was intermingled with legal opinions; the record, however, does not disclose that he is an attorney. It was also conceded at the hearing by Mauro Valentine, an officer of Pine Top, that Pine Top never

asked the State to give it access to the north parcel; it was Pine Top's position, however, that the owners had such right of access. Valentine further testified that the Village of Ossining was adamant in its position that under no circumstances would Pine Top be permitted to use Sandy Drive. Both parties subpoenaed Kenneth J. Christman, a State engineer, who had been involved with the expressway project until its abandonment. Christman testified that at the time of abandonment in 1972 access to the north parcel from Snowden Avenue was across the State land as condemned in the same area as had been designated on the various plans and "it was our belief that this was to be the permanent access to those buildings". Finally, Christman testified that there was only 26 feet of frontage on Snowden Avenue with respect to State Parcel No. 10. Such frontage did not constitute adequate access from the north parcel since the Village of Ossining requires a 50-foot right of way for the development of such parcel. However, even if such right of way were to be permitted, it would not be feasible because of cost, topography and inaccessibility. By report dated September 14, 1979, the commissioners concluded that Pine Top should be awarded a total of $250 as damages for the extinguishment of said easement across the south parcel. The decision stated in pertinent part: "The easement granted to Pine Top by Elissa Lord at the time of conveyance merely permitted Pine Top to travel from the frontage on Snowden Avenue to the State land. Access across the State land to reach the rear parcel was exclusively and completely within the control of the State. Whether there can be any consequential damages to the rear parcel, and the extent of such damages, depends on the nature and extent of the rights of Pine Top to cross the State land from the area of the easement which was condemned to the rear parcel. The burden was upon Pine Top to prove these rights and then to establish the value of the rear parcel considering the nature and extent of the access rights, before and after the taking. Pine Top claimed and sought to establish that it had a legal right of access across the State owned land from the easement which was taken by Ossining Urban Renewal Agency to the rear parcel and that this was a permanent right. * * * The Commissioners find that Pine Top only had a legal right of access from its property onto the State land for the purpose of reaching the State road which was to be constructed on that land and which was to provide access to the rear parcel. In the opinion of the Commissioners, Pine Top failed to establish that it had a valid legally enforceable and permanent right to cross the State land. The Commissioners therefore specifically find that as of February 28, 1973, Pine Top had no existing legally enforceable right to cross from the easement condemned by Ossining Urban Renewal Agency to the rear parcel. Since the only proof of damages offered by Pine top assumed the existence of such rights, we are compelled to find that Pine Top did not establish that it is entitled to recover any damages for a loss in value of the rear parcel. * * * We note that, in our opinion, Pine Top also failed to prove that the rear parcel was land-locked after the condemnation of the easement. The testimony indicated that the State still considers that it has an obligation to provide access to the rear parcel. This could be accomplished by requiring access from the Snowden Avenue frontage owned by the State, even though it may be narrow. (According to the testimony, the State could have required this even if there had been no taking of the easement by the Ossining Urban Renewal Agency.) The State also has the power to acquire additional land in order to re-establish access (Highway Law, Section 10, subd. 24d). In addition, there is an easement or right of way at the northwest corner of the rear parcel which provides access to a public street. Pine Top did not establish that such access was not available for use after the condemnation of the easement as a means of access for development. In fact, although Pine Top

admitted such easement or right of way existed, it was totally ignored by Pine Top's appraiser. * * * The Commissioners therefore accept the testimony by the appraiser for the Ossining Urban Renewal Agency that the loss of the easement area itself caused only nominal damage to Pine Top, which was estimated at $250.00. * * * The Commissioners believe that, as in other cases, the property owner has an obligation to mitigate damages where possible. In the instant case, this might require Pine Top to seek alternate access to its property either through the easement or right of way which was to the rear or through Parcel # 10 and its outlet to Snowden Avenue. Furthermore, the testimony demonstrates that the New York State Department of Transportation believes that it still has an obligation to provide access to the rear parcel. It was therefore an obligation of Pine Top to demonstrate the nature of such alternate access and the value of the rear parcel with such access. Pine Top failed to do this. As a result, even if the Commissioners were to find that there was a consequential loss in value of the rear parcel, the proof is insufficient to establish the amount of damages. * * * Although the determination of the Commissioners is based on the facts and reasons set forth above, we would note that the record indicates that the State of New York acquired Parcel No. 10 in what is called an advance acquisition. The purpose of such advance acquisition is to minimize acquisition costs where a property is being or may be developed in the near future. The fact that the State thereafter abandons its highway project may have a significant impact upon any remainder property. If, in fact, the rear parcel herein is landlocked, or its value has been reduced, this is a direct result of the State's action in abandoning the highway project, and the fortuitous circumstance of an unrelated municipal condemnation should not operate to cast upon the municipality any additional cost for such loss in value. Any such loss in value was caused by the prior determination by the State not to construct the road which was intended to provide legal access to the rear parcel." Special Term granted OURA's motion to confirm the report of the commissioners and thereby denied Pine Top's motion to disaffirm. On this appeal Pine Top argues, *inter alia,* that the agreed statement of facts and Special Term's and the Court of Appeals decisions on Pine Top's motion to intervene established as the law of the case that OURA's taking of the easement across the south parcel extinguished Pine Top's easement of ingress and egress to the north parcel, and thus landlocked it. Pine Top comments that: "The Commissioners of Appraisal in violation of the law of the case and in excess of their jurisdictional grant determined, over the repeated and strenuous objections of Pine Top, the extent and nature of Pine Top's rights in a parcel of State land which lay between Pine Top's property and the easement condemned by OURA." We disagree. The claim by Pine Top of $1,250,000 for damages was predicated upon its having a valid easement from the north parcel across State Parcel No. 10 to the easement crossing the south parcel to Snowden Avenue. The keystone of this claim is the assumed permanency, location and validity of the easement as it crossed over State Parcel No. 10. This substantive question could not be adjudicated by either Special Term or the Court of Appeals in their decisions because the State of New York was not a party to OURA's condemnation of the South Parcel, was therefore not a party to the motion to intervene, and was not a party to any stipulation with respect to agreed facts. In essence, neither the parties nor any prior court determination could determine title to State land in a proceeding in which the State was not a party. Further, at the time of OURA's condemnation of the South Parcel, the temporary State highway work permit had expired. Finally, the subpoenaing by private parties of a State employee and the eliciting of testimony from him in a proceeding in which the State is not a party can in no way encumber

State land with respect to either ownership or easement rights. Pine Top further argues, however, in support of its claim with respect to an easement across State Parcel No. 10, that it retains a private right of easement over the discontinued State highway parcel. We reiterate that rights in or over State land may not be created or adjudicated *ab initio* in this proceeding because the State was not and is not a party. As its final contention, Pine Top argues that to require it to obtain alternative access to its parcel was an improper application of the "Cost to Cure" rule. We have not reached this issue because the commissioners' report must be upheld for the reasons heretofore stated. Titone, J. P., Mangano, Bracken and Boyers, JJ., concur.